Rodes, &c.
*vs*
Commonwealth

---

# Rodes and sureties *vs* Commonwealth.

### Error to the General Court.

### *Motions. Notice. Clerks. Evidence.*

Judge Marshall delivered the opinion of the Court.

This was a motion in the General Court, against Rodes and his sureties, to recover moneys received by him as Clerk of the Fayette County Court, under the Revenue Laws of this Commonwealth, and not paid into the Treasury. The motion was made under the act of 1831, (1 *Stat. Law*, 357,) and other subsequent acts, by which it has been slightly modified.

The constitutionality of the proceeding is questioned, 1st. On the ground that the motion is allowed to be made and judgment to be rendered, without notice to the parties concerned. And 2d. On the ground that the judgment is rendered without a jury.

As to the first ground, it might be sufficient to say, that the defendants actually appeared and made their defence. But we remark further, that the statute itself, fixing the time and manner of initiating motions against the Collectors of the Public Revenue in the General Court, operates as notice to all concerned. It gives notice to all Collectors and their sureties, that on the 3d day of the term of the General Court designated by law, (the

Motion.

*Case 73.*

*April 15.*

The case stated.

The statute giving the remedy by motion against public officers and for failing to pay up the revenue in their hands, is the only notice required of a motion, where it is made at the first term after

RODES, &C.
*vs*
COMMONWEALTH

the revenue is due.

first term after the money should be paid into the Treasury,) motions may be initiated in all cases of default. The public exigencies require promptness in enforcing the accountability of collecting officers. And the duty of accounting and paying, and the time for doing each being fixed by law, there is no hardship in requiring that their sureties shall know whether the duty has been performed, and shall take notice of the proceedings against them on the appointed day. The statutes provide that if the motion in any case should not be made at the first term, ten day's notice shall be given.

Where the amount to be recovered against a Clerk by the Commonwealth, for failing to pay up the public dues is liquidated, no jury is necessary, unless it be rendered so by the nature of the defence relied on.

On the second point, we refer to the third answer given by this Court to an objection founded on the same clause of the constitution, in the case of *Harrison* vs *Chiles*, (3 *Littell's Rep.*, 200,) where a judgment for the fines inflicted on the Clerk for charging illegal fees, is shown not to be erroneous for want of a verdict, because the amount was liquidated by the fee bill itself. So in the regular proceeding under this statute, the amount of the demand is liquidated by the report of the Clerk himself, and there is no necessity for a jury, unless it arise from the nature of the defence. In this case there was nothing for a jury to decide. There was no issue of fact made by the defence. Nor was there any demand for a jury. If the evidence relied on for fixing the amount due was admissible, the demand was liquidated, and there being no effort to reduce it by proof of payments or otherwise, there was no necessity for a jury.

Each official bond of a Clerk is binding until a new bond is executed, recorded, and transmitted to the Clerk of the Court of Appeals.

It is further contended that Garrett Watts, one of the defendants, against whom the judgment was rendered, was not bound for the particular defalcation for which the motion was made, because before the receipt by the Clerk of any of the sums alledged not to have been paid over, and before the commencement of the period which is covered by the motion and claim of the Commonwealth, a new official bond was executed by the Clerk, with other sureties, and received by the Court as a substitute for the previous bond to which Watts was a party, and in satisfaction and discharge of it. But the record of the County Court is itself equivocal, and not entirely consistent upon this subject, and we are not prepared to admit

that it can be helped out by the parol facts presented in this record touching the intention and understanding of the parties and of the Justices. This point, however, we do not and need not decide; because even if the record itself had stated explicitly, that the new bond was executed and received in lieu and satisfaction of the old one, the statute of 1810, (1 *Stat. Law*, 391-2,) expressly declares that each bond executed by a Clerk under its requisition, shall be in force against every misconduct of the Clerk while in office, or until another bond shall be duly executed, recorded, and transmitted to the Clerk of the Court of Appeals or General Court, as the case may be, under its provisions. The old bond to which Watts was a party, appears to have been transmitted to the Clerk of the Court of Appeals, as the copy used upon this motion is certified by that officer. But there is no evidence that the new bond ever was so transmitted. And therefore Watts, as now appears, continued bound for subsequent defalcations or other misconduct, whatever may have been the intended operation of the new bond. Moreover, as the transmission of the bond to the Clerk of the Court of Appeals is the appointed mode of informing the fiscal officer of the government of the execution of such bond, and as without such transmission there is no presumption that the fact is known to him, we are of opinion that even if the motion could have been made jointly against the obligors in both bonds, no advantage can be taken, at any rate in this Court, of its having been made against the obligors in the first bond alone, nor of the judgment being against them only. Nor because the Auditor was not apprised of the release of two of the sureties in the old bond, as provided for by the statute of 1799, (2 *Stat. Law*, 1439,) can any advantage be taken of the joining of those parties in the motion and the failure to obtain judgment against them, even if this motion be held subject to the technical rules on which this objection is founded? The liability of the obligors in the new bond, either to contribution or to an action on their bond for the same defalcation, does not now come in question, and we need not decide whether that bond is so expressed as to cover that defalcation.

RODES, &c.
*vs*
COMMONWEALTH

The report of the Clerk of a Court of the amount of moneys received by him for the Commonwealth, and payable into the Treasury, made within a reasonable time after his removal from office, is *prima facie* evidence of the amount due to the Commonwealth, as well against his sureties as himself, in a motion.

The only remaining question relates to the competency and admissibility of the evidence by which the amount of public dues received by Rodes was ascertained. It is made the duty of the several Clerks to return to the Auditor by a designated day in each year, an account of taxes received by them for public purposes. And although the statutes do not, so far as we have discovered, provide specially for the performance of this act in case of the removal or resignation of a Clerk, yet as the return of the person who legally received the taxes, &c., is the prescribed mode of communicating the amount received to the Auditor of Public Accounts, and as no other person is required or authorized to make that return but the Clerk himself, by whom the moneys were received and the account kept, we are of opinion that if a Clerk who resigns or is removed, has not, before his resignation or removal, made, as he should do if possible, a complete return, embracing the last of his official receipts for the public, it is his duty to make the return afterwards. This duty, though performed after he ceases to be Clerk, grows out of his official relation to the government, and belongs to it. And although the return made after he has ceased to be Clerk, may not, strictly speaking, be deemed an official act, yet it is an act done in discharge of an official duty which he had neglected while in office, and for which his sureties were bound.

Under these views we are of opinion that his return being an act necessary to the complete fulfilment of his duty with regard to the public dues officially received by him, should, if made in a reasonable time after he ceases to be Clerk, be regarded as a part of the *res gesta*, and therefore, as evidence admissible, not only against himself, but also against the sureties in his official bond. It is not, however, conclusive against them. And the effect of our decision of the point in question is, that when one who has been Clerk afterwards makes return of public moneys received by him while in office, it is *prima facie* evidence against his sureties, who have bound themselves for his fidelity, and throws upon them the *onus* of proving that it is false; and we decide this upon the ground that it is not to be regarded as a mere admission by the

principal, after he is out of office, but as a *quasi* official act, necessary and proper for the complete performance of the duties for which the sureties are bound, and that the return having been first presented and sworn to by the late Clerk in the County Court of which he had been Clerk, by which Court it was ordered to be certified to the Auditor, the sureties had, presumably, an opportunity of contesting its truth, and it was properly received by the Auditor in place of the return which should have been made while Rodes remained in office.

No proof having been offered in opposition to the verity of this return, it must be deemed sufficient to authorize the judgment, which is therefore affirmed.

*Combs & Shy and Johnson* for plaintiffs: *Cates, Attorney General,* for Commonwealth.